IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATMEL CORPORATION,<br><br>        Plaintiff,<br><br>  v.<br><br>ST. PAUL FIRE & MARINE,<br><br>        Defendant.<br>_____ / | No. C 04-04082 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO STRIKE SUPPLEMENTAL DECLARATION OF SHELLY KNOX** |

On October 7, 2005, the Court heard oral argument on plaintiff's motion for partial summary judgment. For the reasons set forth below, the Court hereby GRANTS in part and DENIES in part plaintiff's motion, and DENIES defendant's motion to strike the Supplemental Declaration of Shelly Knox.

**BACKGROUND**

Plaintiff Atmel Corporation ("Atmel") is a company that manufactures computer chips. Atmel obtained general liability and errors and omissions insurance from defendant St. Paul Fire & Marine Insurance Company ("St. Paul") beginning January 1, 2002. This lawsuit arises out of St. Paul's refusal to defend Atmel in a now-settled lawsuit brought by one of Atmel's customers, Seagate Corporation. In that lawsuit, which the parties refer to as the "*Seagate* Action," Seagate alleged that Atmel sold it defective computer chips and that Seagate had notified Atmel of the problems in the fall of 2001. St. Paul denied a defense in the *Seagate* Action and unilaterally rescinded Atmel's insurance policy on the ground that Atmel knew about the Seagate problems before the policy was issued and failed to disclose them in its applications for insurance.

Although the parties dispute virtually all of the facts surrounding St. Paul's rescission of the insurance policy, it is undisputed that Atmel did not identify any problems with Seagate or the allegedly defective

computer chips on its applications for insurance. The errors and omissions application asked: "Does anyone in your organization have knowledge or information of any act, error or omission which might reasonably be expected to result in an Errors & Omissions claim?" Runkel Decl., Ex. E. The general liability application similarly asked Atmel to identify "all claims or occurrences that may give rise to claims for the prior 5 years." *Id.* at Ex. F.

After it was sued in July of 2002, Atmel tendered the *Seagate* Action to St. Paul and to its previous insurer, Royal Indemnity Company, which had provided Atmel with insurance through December 31, 2001.[1] Atmel and St. Paul characterize the events that followed the tender in markedly different ways. Atmel contends that after St. Paul acknowledged notice of the lawsuit on August 20, 2002, it began a "fishing expedition" by unreasonably requesting more and more information while refusing to defend in the meantime. St. Paul, in contrast, claims that Atmel failed to cooperate with its investigation into the claim, and that Atmel was not forthcoming about the extent or nature of its knowledge of the problems with Seagate. It is undisputed that Atmel provided St. Paul with two boxes of documents regarding the *Seagate* Action in October 2003. The parties exchanged a series of letters between February and July 2004 regarding whether St. Paul had a duty to defend Atmel in the *Seagate* Action, and relatedly whether St. Paul was entitled to rescind the policy because Atmel should have disclosed any issues related to Seagate on its insurance applications.

On September 27, 2004, Atmel filed the instant lawsuit seeking damages and declaratory relief against St. Paul for breach of contract and breach of the implied covenant of good faith and fair dealing. St. Paul counterclaimed, alleging rescission, breach of contract, intentional misrepresentation/ concealment, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. St. Paul has also raised rescission as one of several affirmative defenses.

On November 2, 2004, after this lawsuit was filed, St. Paul tendered rescission of the policy and offered Atmel a check for the premiums paid to date, stating "St. Paul hereby rescinds the above-referenced policies in their entirety, rendering them void from inception." Cusack Decl., Ex. T. Atmel rejected the tender of rescission on November 5, 2004, and returned the proffered check.

---

[1] Royal defended Atmel in the *Seagate* Action subject to a reservation of rights. Atmel states it incurred approximately $7.4 million in defense fees and costs in the *Seagate* Action, and that Royal paid approximately $3.7 million. *See* Supplemental Knox Decl.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Atmel seeks an order granting partial summary judgment on the following three issues: (1) that St. Paul breached its duty to defend Atmel in the *Seagate* action, notwithstanding St. Paul's allegations of rescission, and is liable for Atmel's unreimbursed defense costs unless and until it is adjudicated that the policy is rescinded; (2) that Civil Code § 2860, which limits the rates that insurers pay independent counsel when an insurer's reservation of rights creates a conflict of interest, has no relevance to the measure of Atmel's damages for St. Paul's breach of its duty to defend; and (3) that the Fraud and Misrepresentation clause contained in the policy requires St. Paul to prove intentional fraud in order to rescind (and for this reason St. Paul's cause

of action for negligent misrepresentation should also be dismissed).

### 1. Duty to Defend/Unilateral Rescission

Atmel contends it is entitled to summary judgment on the issue of whether St. Paul violated its duty to defend Atmel in the *Seagate* action. Atmel argues that the allegations of the Seagate complaint, the terms of the St. Paul policy, and other extrinsic evidence, created the potential for covered liability. Therefore, Atmel argues, St. Paul was obligated to assume the defense, under a reservation of rights if it wished, unless and until it could conclusively establish its right to rescind. Atmel contends that St. Paul was not entitled to unilaterally rescind the policy and instead should have sought rescission judicially.

In response, St. Paul contends that it was entitled to unilaterally rescind the policy due to Atmel's failure to disclose the problems with Seagate in its application for insurance, and thus the insurance contract was retroactively null and void. St. Paul argues that the cases relied upon by Atmel which discuss an insurer's duty to defend are distinguishable because they all presume the existence of a valid contract. Here, St. Paul contends, there was no valid contract because St. Paul rescinded the policy. Thus, according to St. Paul, there is no breach of the duty to defend unless the Court first sets aside St. Paul's rescission as improper.

None of the cases cited by the parties are directly on point. The cases relied on by Atmel provide that an insurer has a duty to defend any time there is a potential for coverage, even if coverage is ultimately found lacking. *See, e.g., Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 299 (1993); *Amato v. Mercury Cas. Co.*, 18 Cal. App. 4th 1784, 1791-92 (1993). These cases are distinguishable, however, because they involved disputes over coverage, not disputes regarding the underlying validity of the policies at issue. These cases do not address the issue presented here regarding whether an insurer has a duty to defend notwithstanding the fact that it has rescinded an insurance policy, if the insured disputes the propriety of the rescission.

Although none of the authorities cited by the parties squarely answer this question, case law, Civil Code § 1691, and the Insurance Code suggest that there is no duty to defend if an insurer has unilaterally rescinded a policy unless and until the rescission has been set aside. The California Insurance Code allows an insurer to rescind a policy if the insured has concealed or misrepresented material facts in its application for insurance.

4

*See* Cal. Ins. Code § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); § 359 ("If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."). Civil Code § 1691 sets forth the procedure a party must follow in order to effect a rescission of a contract. *See* Cal. Civ. Code § 1691 (stating rescinding party must give notice of rescission to the other party and restore, or offer to restore, the consideration provided).

Where grounds for rescission exist and the insurer properly exercises its right to rescind, the insured's contract rights are extinguished *ab initio* (as if the policy had never existed). *See* Cal. Ins. Code § 359; *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 182 (1988). An insurer may avoid any liability for benefits provided under the policy, even on pending claims: "[A] Rescission effectively renders the policy totally unenforceable from the outset, so that there never was any coverage, and therefore no benefits are payable." *Sogomonian*, 198 Cal. App. 3d at 182; *see also Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 419 (9th Cir. 1998) ("The district court correctly determined as a matter of law that if Cigna prevailed on its rescission claim, Polaris' counterclaims [for breach of insurance contract] necessarily would be defeated.").

The California Court of Appeals' decision in *Sogomonian*, authored by Justice Walter Croskey, is particularly instructive. In that case, the court found that defendant homeowners had made material misrepresentations in their application for homeowners insurance, and held that the insurance company was entitled to rescission. 198 Cal. App. 3d at 181-82. The court noted that rescission is retroactive to the time that the representation became false, and thus avoids liability even on pending claims. *Id.* at 182. The court rejected the defendants' argument, similar to plaintiff's position here, that the insurance company had statutory obligations notwithstanding a rescission. The defendant insureds in *Sogomonian* argued that the insurance company had violated its statutory obligations under Insurance Code § 790.03, and that the defendants' right to recover damages for such violations transcended rescission of the policy. The court noted that "[t]here is some authority for the proposition that an insurer owes a duty to the insured under section 790.03, subdivision (h) even where it is established that there is no coverage and thus no duty either to indemnify or defend. However, this may well be appropriate where the dispute is limited to the question of coverage as to a

5

particular claim, since there still remains viable the underlying relationship of insurer-insured. But what of the circumstance where the dispute between the insurer and the insured goes beyond the issue of coverage and results in the rescission of the entire contract of insurance?" The court continued,

> A contract is extinguished by its rescission. The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received. Here, this would require the refund by Imperial of any premiums and the repayment by the defendants of any proceed advance which they may have received. The policy would be "extinguished" *ab initio*, as though it had never existed. In other words, defendants, in law, never were insureds under a policy of insurance. That status cannot exist in a vacuum, but must necessarily depend upon the existence of a valid policy of insurance. No compelling reason has been suggested to us, nor can we conceive of any, as to why defendants, having obtained the policy upon the basis of material concealment, should now have a greater right under section 790.03, subdivision (h) than a party whom Imperial may have declined to insure because of truthful answers in a policy application.

*Id.* at 183-84 (internal quotations and citations omitted).

Plaintiff contends that St. Paul had a duty to defend unless and until a court enforced its rescission of the policy. However, neither the Insurance Code nor case law imposes such a requirement. *See Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1389 (1993) ("Absent grounds for rescission, there is nothing the insurer can *unilaterally* do to avoid liability under the policy once the contingency insured against occurs.") (emphasis added); *Harrison v. Connecticut Mut. Life Ins. Co.*, 771 F. Supp. 1053, 1056 (N.D. Cal. 1991) ("Where the procedural prerequisites of section 1691 are met, and there is valid substantive ground for rescission, unilateral rescission occurs. It is not necessary to follow with a lawsuit in order to effectuate the rescission.").

The cases cited by plaintiff do not hold otherwise. In *909 Geary Street, LLC v. Admiral Insurance Company*, 2002 WL 253946 (N.D. Cal. Feb. 8, 2002), and *Perini Corporation v. Orion Insurance Company*, 331 F. Supp. 453 (E.D. Cal. 1971), the courts enforced "service of suit" clauses in insurance policies which allowed the plaintiff insureds to select the forum for litigation. The courts enforced the clauses and remanded the cases to state court, and in so doing rejected the insurers' arguments that because the insurance companies had rescinded the policies, the "service of suit" clauses were ineffective. *See 909 Geary St.*, 2002 WL at *2; *Perini Corp.*, 331 F. Supp. at 457. Both courts, however, explicitly noted that they were not addressing the merits of the insurer's rescission defenses. *Id.* Although these cases provide some support for plaintiff's position that the contract is still in effect and enforceable unless and until a court has ruled

otherwise, neither case holds that an insurance company may be found *substantively* liable under a rescinded policy, which is the finding that plaintiff seeks here. Instead, the courts in *909 Geary Street* and *Perini* enforced procedural clauses regarding the forum for litigation, and both courts specifically noted that the decision to remand was not a decision on the substantive merits of the insurer's rescission claim. *Id.*

Plaintiff's reliance on *Maniar v. Capital Bank of California*, 1993 WL 515880 (N.D. Cal. Dec. 6, 1993), is also unavailing. In that case, a party attempted to rescind a contract, and after the non-rescinding party refused to take back the consideration, the rescinding party sought judicial enforcement. The *Maniar* court held that in those circumstances, the contract was "voidable" but not yet void, and the unilateral rescission is revocable until effectuated by the court: "[T]he possibility remains that the court may find insufficient grounds for rescission . . . and conclude that the contract has in fact not been rescinded." *Id.* at *3. The court concluded that the rescission was improper, and found in favor of the non-rescinding party. Notably, the *Maniar* court did not, as plaintiff asks this Court to do, first analyze whether the rescinding party had breached its obligations under the contract and then determine whether the rescission was proper.

Plaintiff contends that allowing unilateral rescission without judicial approval would allow for an anomalous result: the carrier could delay defending just by alleging grounds for rescission, then when the insured files suit, it could tender rescission and vitiate not only its duty to defend but also the insured's declaratory relief and breach of contract duties. However, the *Sogomonian* court rejected a similar argument, stating "[o]ur conclusion here should not result in an assumption by insurers that policy liability can, with impunity, be avoided or delayed by assertion of a claim for rescission. That is a tactic which is fraught with peril. Where no valid ground for rescission exists, the threat or attempt to seek such relief may itself constitute (1) a breach of the covenant of good faith and fair dealing which is implied in the policy and/or (2) the commission of one or more of the unfair claims settlement practices proscribed by Insurance Code section 790.03, subdivision (h)." *Sogomonian*, 198 Cal. App. 3d at 185 n.16.[2]

Here, it may be the case that St. Paul's rescission was improper and that Atmel is entitled to relief. However, plaintiff asks this Court to skip the necessary first step of determining whether the rescission was

---

[2] *Sogomonian* pre-dated the California Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Insurance Companies*, 46 Cal.3d 287 (1988), which held that there is no private right of action to enforce Cal. Ins. Code § 790.03 (h).

7

valid. Unless and until the Court concludes that defendant's rescission was improper, it is premature to evaluate whether defendant breached any obligations under the policy. *Maniar* does not compel a finding that St. Paul breached its duty under the policy independent of analyzing whether St. Paul's rescission of the policy was proper. To the contrary, *Maniar* simply holds in a situation where the non-rescinding party objects to a rescission – as is the case here – the rescission is not finalized and may be set aside as improper by a court. As in *Maniar,* this Court may later conclude that St. Paul's rescission of the policy was improper, and at that time the Court would set aside the rescission and determine the parties' rights and obligations under the policy.[3]

Here, St. Paul argues that there never was a valid contract between Atmel and St. Paul because Atmel failed to disclose material facts about problems with Seagate. If this is true, and St. Paul was entitled to rescission, then the legal duty to defend was never triggered. Because the parties dispute virtually all of the facts surrounding the propriety of St. Paul's rescission and whether Atmel improperly failed to disclose the *Seagate* issues on its insurance application, summary judgment is not appropriate.[4]

## 2.     Damages and Civil Code § 2860

Atmel seeks a ruling from the Court that California Civil Code § 2860 has no relevance to the measure of Atmel's damages for St. Paul's breach of its duty to defend. Civil Code § 2860 addresses a carrier's obligations to provide independent counsel to defend its insured when the carrier's reservation of rights creates a conflict. Section 2860(c) provides, among other things, that "[t]he insurer's obligations to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to

---

[3] The other primary case plaintiff cites to argue that St. Paul is liable under the policy until the rescission is judicially approved is inapposite. *See National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496 (9th Cir. 1997) (holding that an insurance company breached its duty to defend because there was a possibility of coverage under the policy; policy was not rescinded).

[4] At oral argument plaintiff raised for the first time the argument that St. Paul's rescission was improper under California Insurance Code § 650. In response, defendant contended that notwithstanding the language of § 650, it was not precluded from bringing a counterclaim for rescission or raising rescission as an affirmative defense. Plaintiff did not seek summary judgment on this issue (nor on the more general issue of the propriety of St. Paul's rescission), and the parties have not briefed this matter. Accordingly, the Court expresses no opinion at this time regarding whether St. Paul's rescission comported with § 650, or what consequences flow from non-compliance with that Section.

attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." Cal. Civ. Code § 2860(c). Plaintiff contends that because St. Paul did not defend it in the *Seagate* Action, if St. Paul breached its duty to defend it cannot take advantage of the rate limitations set forth in § 2860(c).

St. Paul contends that it is premature for the Court to address this issue because there is no contract of insurance, and thus no breach of the duty to defend, unless and until the Court sets aside St. Paul's rescission. Although the Court has not yet made any finding regarding whether defendant breached a duty to defend, the Court nevertheless concludes that the issue of whether damages are limited by Civil Code § 2860 presents a pure legal question appropriate for summary judgment, and that the resolution of this issue may help focus discovery and the remaining litigation of this case.

The Court concludes that if plaintiff is able to establish a breach of the duty to defend, its damages are not limited by California Civil Code § 2860. St. Paul argues that § 2860 applies because *if* it had defended Atmel in the *Seagate* Action, it would have done so under a reservation of rights. This argument misses the point, however, because as numerous courts have recognized, "[t]o take advantage of the provisions of § 2860, an insurer must meet its duty to defend and accept tender of the insured's defense, subject to a reservation of rights." *Concept Enterprises, Inc. v. Hartford Ins. Co. of the Midwest*, 2001 WL 34050685, at *3 (C.D. Cal. May 22, 2001); *see also California v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1544 (1998) (noting the trial court's unchallenged finding "that [the insurer] had materially breached its duty to defend, and therefore had forfeited its right to participate in or control the . . . defense, whether based on Civil Code section 2860 or otherwise . . . ."); *Foxfire, Inc. v. New Hampshire Ins. Co.*, 1994 WL 361815, at *3 (N.D. Cal. July 1, 1994). Here, it is undisputed that St. Paul did not defend Atmel in the *Seagate* Action, and thus the Court concludes defendant cannot avail itself of the protections and limitations set forth in § 2860.

Relatedly, St. Paul contends that if Atmel's damages are not limited by § 2860, then Atmel will be allowed a double recovery and will be placed in a position better than it would have been in the absence of any breach by St. Paul. St. Paul contends that *if* it had defended Atmel subject to a reservation of rights, St. Paul and Royal would have shared the defense costs under § 2860; allowing St. Paul to recover damages above and beyond what Royal has already paid, St. Paul argues, will compensate Atmel beyond just contract

9

damages and instead is akin to a punitive award.

However, as discussed above, St. Paul's argument is premised upon what would have happened *if* it had defended Atmel subject to a reservation of rights. St. Paul may very well be correct that if it had defended Atmel subject to a reservation of rights, St. Paul and Royal would have shared the § 2860 costs.[5] However, St. Paul did not defend Atmel. The cases cited by St. Paul do not support its position; instead, they simply hold that where an insured is covered by multiple insurance companies, the insured is not entitled to more than 100% of the total defense costs. *See Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1088-89 (2005) (holding insured did not have contract damages because 100% of defense costs paid by two insurers; also stating that "[t]he general measure of damages for a breach of the duty to defend an insured, even if it is ultimately determined there is no coverage under the policy, are the costs and attorney fees expended by the insured defending the underlying action."); *Prichard v. Liberty Mut. Ins. Co.*, 84 Cal. App. 4th 890, 909 (2000) (holding where multiple insurers potentially provide coverage, insured cannot insist the insurers should each pay the whole of attorneys' bill); *cf. Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1283 (1998) ("[W]here there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery."). Here, it is undisputed that Atmel has unreimbursed defense costs.

St. Paul has also moved to strike plaintiff's Supplemental Declaration of Shelley Knox under Federal Rules of Evidence 401 and 403 as irrelevant and confusing. The Court DENIES the motion to strike the declaration, because the amount that Atmel paid to defend the *Seagate* Action, and the amount covered by Royal, is not irrelevant to an eventual determination of damages, should the Court ever reach that issue.

**3.     The Fraud and Misrepresentation Clause**

Plaintiff contends that a "Fraud and Misrepresentation" clause contained in the insurance policy requires

---

[5] The Court notes that in its reply brief, Atmel states that whether Royal was entitled to any benefit of § 2860(c), or if so at what rates, remained in dispute between Atmel and Royal throughout the *Seagate* Action. It is unclear whether there is a current dispute between Atmel and Royal regarding Royal's payment of defense costs, and in any event, any such dispute is irrelevant to whether St. Paul had an independent duty to defend the *Seagate* Action.

10

St. Paul to prove intentional fraud in order to rescind the policy. The Fraud and Misrepresentation clause in the policy provides:

> This policy is void if you or any other protected person hide any important information from us, mislead us, or attempt to defraud or lie to us about any matter concerning this insurance – either before or after a loss. Of course, everyone makes mistakes. Unintentional errors or omissions won't affect your rights under this policy.

Cusack Decl., Ex. F.

Atmel argues that this clause sets the standard for rescission at intentional fraud. Atmel contends that notwithstanding the various Insurance Code sections permitting rescission based on unintentional or negligent misrepresentation or concealment in connection with the application process, defendant waived its right to material information through this clause pursuant to Cal. Ins. Code § 336, which provides, "[t]he right to information of material facts may be waived, either (a) by the terms of insurance or (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated."

Plaintiff's argument is not persuasive. The plain language of the Fraud and Misrepresentation clause does not waive St. Paul's right to material information. Instead, the Fraud and Misrepresentation clause simply states that a policy is void if an insured or any other protected persons "hide any important information from us, mislead us, or attempt to defraud or lie to us about any matter concerning this insurance – either before or after a loss. . . . Unintentional errors or omissions won't affect your right under this policy." An insurer's statement that a party's rights will not be affected due to unintentional errors or omissions is *not* tantamount to the insurer's waiver of its statutory right to material information in the application process.

Moreover, as St. Paul notes, the questions in the application and the certification Atmel was required to sign as part of the application demonstrate that St. Paul did not waive its right to any material information in the application process. *See* Runkel Decl., Exs. E & F; *see also Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 916 (1973) ("The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law.") (citations omitted).

California courts have held language similar to the Fraud and Misrepresentation clause inapplicable to rescission of a policy based on misrepresentation and concealment in a policy application. In *Mitchell v.*

11

*United Nat'l Ins. Co.*, 127 Cal. App. 4th 457 (2005), the court considered whether a standard "fraud and concealment" clause, mandated by the California statutory fire insurance policy form, and which requires intentional misrepresentation, precluded an insurer from rescinding an insurance policy in the absence of intentional fraud. The mandatory standard form policy at issue in *Mitchell* is similar to the Fraud and Misrepresentation clause in the insurance policy in this case. It stated,

> Concealment, fraud: This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in any case of any fraud or false swearing by the insured relating thereto.

*Id.* at 470. *See* Cal. Ins. Code § 2071.

The *Mitchell* court concluded that this clause did not affect or limit an insurer's rescission rights under Insurance Code §§ 331 and 359. The court noted that these sections govern disclosure obligations "directed specifically at the formation of the insurance contract," while § 2071 is intended to apply in connection with a claim for policy benefits. *See also Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407 (1988) (holding insured had engaged in intentional fraud in connection with a claim, and noting in dicta that "section 334 [defining "materiality"] is not applicable to the instant case because it relates to statements made in *applications* for insurance, not statements made in an insured's claim. The materiality of a representation made in an application for insurance is determined by a *subjective* standard . . . and rescission will be allowed even though the misrepresentation was the result of negligence or the product of innocence.") (emphasis in original).

Plaintiff argues that *Mitchell* is distinguishable because the concealment and fraud clause at issue in that case was statutorily mandated, and thus the court was required to reconcile that mandatory language with the rescission provisions of Insurance Code §§ 331 and 359. Although plaintiff is correct that the concealment and fraud clause in *Mitchell* was statutorily mandated, there is nevertheless no persuasive or logical reason to arrive at a different interpretation of a very similar clause in this case. As St. Paul notes, common sense dictates that the Fraud and Misrepresentation clause, which is contained in the policy issued *after* the application has been approved, does not apply to misrepresentation or concealment in an insurance application.

The cases and statutes plaintiff relies on are inapposite. The fact that the California Insurance Code permits or requires carriers to limit their rescission rights in life insurance and disability policies has no bearing on the interpretation of the specific Fraud and Misrepresentation clause at issue in this case. Similarly, the out-

12

of-state authority plaintiff cites (on page 16 of the opening brief) is not relevant because the courts in those cases were not interpreting California law.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part plaintiff's motion for partial summary judgment [Docket # 73] and DENIES defendant's motion to strike the Declaration of Shelly Knox [Docket # 167].

**IT IS SO ORDERED.**

Dated: October 7, 2005

SUSAN ILLSTON
United States District Judge