IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATMEL CORPORATION, | No. C 04-04082 SI |
| Plaintiff, | **ORDER GRANTING IN PART ATMEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING ST. PAUL'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | |
| Defendant. | |

On February 17, 2006, the Court heard oral argument on Atmel's motion for partial summary judgment and St. Paul's motion for summary judgment. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART Atmel's motion and DENIES St. Paul's motion.

**BACKGROUND**

Plaintiff Atmel Corporation ("Atmel") is a company that manufactures computer chips. Atmel obtained general liability and errors and omissions insurance from defendant St. Paul Fire & Marine Insurance Company ("St. Paul") beginning January 1, 2002. This lawsuit arises out of St. Paul's refusal to defend Atmel in a now-settled lawsuit brought by one of Atmel's customers, Seagate Corporation. In that lawsuit, which the parties refer to as the "*Seagate* Action," Seagate alleged that Atmel sold it defective computer chips and that Seagate had notified Atmel of the problems in the fall of 2001. St. Paul denied a defense in the *Seagate* Action and, after Atmel filed the instant lawsuit, St. Paul unilaterally rescinded Atmel's insurance policy on the ground that Atmel knew about the Seagate

problems before the policy was issued and failed to disclose them in its applications for insurance.

Although the parties dispute the significance and meaning of virtually all of the facts surrounding Atmel's application for insurance and St. Paul's rescission of the insurance policy, it is undisputed that Atmel did not identify any problems with Seagate or the allegedly defective computer chips on its applications for insurance. The errors and omissions application asked: "Does anyone in your organization have knowledge or information of any act, error or omission which might reasonably be expected to result in an Errors & Omissions claim?" The ACORD application similarly asked Atmel to identify "all claims or occurrences that may give rise to claims for the prior 5 years."

After it was sued in July of 2002, Atmel tendered the *Seagate* Action to St. Paul and to its previous insurer, Royal Indemnity Company, which had provided Atmel with insurance through December 31, 2001. Atmel and St. Paul characterize the events that followed the tender in markedly different ways. Atmel contends that after St. Paul acknowledged notice of the lawsuit on August 20, 2002, it began a "fishing expedition" by unreasonably requesting more and more information while refusing to defend in the meantime. St. Paul, in contrast, claims that Atmel failed to cooperate with its investigation into the claim, and that Atmel was not forthcoming about the extent or nature of its knowledge of the problems with Seagate. The parties exchanged a series of letters between February and July 2004 regarding whether St. Paul had a duty to defend Atmel in the *Seagate* Action, and relatedly whether St. Paul was entitled to rescind the policy because Atmel should have disclosed any issues related to Seagate on its insurance applications.

On September 27, 2004, Atmel filed the instant lawsuit seeking damages and declaratory relief against St. Paul for breach of contract and breach of the implied covenant of good faith and fair dealing. St. Paul counterclaimed, alleging rescission, breach of contract, intentional misrepresentation/ concealment, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. St. Paul has also raised rescission as one of several affirmative defenses. On November 2, 2004, after this lawsuit was filed, St. Paul tendered rescission of the policy and offered Atmel a check for the premiums paid to date, stating "St. Paul hereby rescinds the above-referenced policies in their entirety, rendering them void from inception." Cusack Decl., Ex. T. Atmel rejected the tender of rescission on November 5, 2004, and returned the proffered check.

In addition, after Atmel tendered the *Seagate* Action in July or August of 2002, it sought to renew its policies with St. Paul. The renewal process took place in the Fall of 2002. Cusack Decl. Ex. I at 27:16-18. During the renewal process, the St. Paul employee in charge of processing Atmel's renewal, Ken Falvey, was aware of the tender of the *Seagate* Action, and spoke with the St. Paul claims handler, Jim Runkel, who was handling the tender of the *Seagate* Action. *Id.* at 27-28. Runkel has testified that during that conversation, which occurred "at the end of 2002," Falvey asked Runkel what he knew about the *Seagate* claim, and Runkel responded that his knowledge was limited to what was alleged in the complaint. Cusack Decl. Ex. S at 75-76.[1] Runkel also testified that Falvey did not ask him to send him any information about the claim. *Id.* at 76. At some point – it is unclear when - Falvey received a copy of the *Seagate* complaint, which alleged that Atmel was aware of the mold compound issues in the Fall of 2001. Cusack Decl. Ex. I at 27:14-15. It is undisputed that during the renewal process Falvey did not ask Atmel about the *Seagate* Action, nor did Falvey request any information about Atmel's knowledge of the Seagate issues either at the time it initially applied for insurance or at the time it was seeking renewal. St. Paul renewed the policies, which were effective January 1, 2003. Cusack Decl. Ex. UU.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d

---

[1] By letter dated December 5, 2002, Runkel sent a letter to Atmel which, *inter alia*, quoted the allegation from the *Seagate* complaint alleging that Seagate complained to Atmel in October 2001 about the chip problems; in that letter Runkel asked for all correspondence showing when Atmel first became aware of the Seagate problems. Cusack Decl. Ex. DD at pp. 2, 8.

3

626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1. Atmel's Motion for Partial Summary Judgment: Cal. Ins. Code § 650**

Atmel moves for partial summary judgment to establish that pursuant to California Insurance Code Section 650, St. Paul was precluded from unilaterally rescinding the insurance policies in November 2004 because Atmel had already filed suit in September 2004 to enforce its rights under the policies. Atmel contends that because Section 650 barred St. Paul's unilateral rescission, the insurance policies are currently in place, and St. Paul is limited to raising rescission as an affirmative defense. Thus, Atmel argues, because the insurance policies are currently in place, St. Paul's duty to defend did not disappear, but remains "the central issue in this case." Atmel also argues that the resolution of this motion will affect the framing of Atmel's rights on its claims for breach of contract and bad faith. St. Paul responds that Section 650 is a procedural statute intended to avoid multiple suits raising rescission, and that even if Atmel's interpretation is correct, St. Paul has not lost any of its substantive rights to rescind.

The Court concludes that Atmel is correct that California Insurance Code Section 650 precluded St. Paul from unilaterally rescinding the policy after Atmel filed suit to enforce the policy. Section 650, titled "Time for Exercising Right," provides, in relevant part, "[w]henever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised any time

4

1 previous to the commencement of an action on the contract." Cal. Ins. Code § 650.[2] The plain language
2 of this statute requires that an insurance company tender rescission of a policy prior to the filing of a
3 lawsuit. *See Resure Inc. v. Superior Court of Los Angeles County*, 42 Cal. App. 4th 156, 166 (1996)
4 ("The Legislature intended that the insurer be precluded from rescinding once the insured had proceeded
5 with an action to enforce the insurance contract at law.").

6 However, as the case law holds, although a insurer is precluded from unilaterally rescinding once
7 an insured has filed suit, the insurer may raise "the same issues" by asserting rescission as an affirmative
8 defense and counterclaim. *Resure Inc. v. Superior Court of Los Angeles County*, which was cited
9 extensively by both parties, is instructive. In *Resure*, the plaintiff insurance company filed suit to
10 rescind an insurance policy. The defendant insured argued that the suit was barred because the action
11 for rescission was an "action on the contract" pursuant to Section 650, and the insurer had not given
12 notice of rescission prior to filing the action. The court began its analysis by stating, "[w]e believe it
13 instructive to recognize that loss of the right to rescind would not have a definitive impact on Resure's
14 ability to avoid coverage. It has long been held that rescission is not the sole remedy for an insurer who
15 has been subjected to misrepresentations and concealment of material facts by an applicant." *Id.* at 161.
16 The court then reviewed a number of cases which all stand for the proposition that an insurance
17 company can seek relief through, *inter alia*, reformation, a claim for damages for wrongful
18 misrepresentation, or defending on the ground of misrepresentations in the application. *Id.* at 161-62
19 (discussing *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.*, 64 Cal. App. 3d 261 (1976);
20 *Barrera v. State Farm Mut. Automobile Ins. Co.*, 71 Cal. 2d 659 (1969); *Nat'l Union Fire Ins. Co. of*
21 *Pittsburgh, Pa. v. Dixon*, 663 F. Supp. 1121 (N.D. Cal. 1987)). After summarizing these cases, the court
22 then stated, "[e]stablished law clearly affords the insurer the right to avoid coverage by way of cross-
23 claims and affirmative defenses when the insured files an action on the contract before the insurer can
24 file its action for rescission." *Id.* at 163.

25 Finding that this "established law" did not govern the situation presented in *Resure*, the court

---

[2] Section 650 is contained within Part 1 of the Insurance Code, "The Contract." Other sections within Part 1, such as Section 331, provide parties the right to rescind. *See, e.g.*, Cal. Ins. Code § 331 "Effect of Concealment" ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.").

5

then examined the history of Section 650, and concluded that the defendant insurer's suit was not barred:

> When Insurance Code section 650 was enacted, the distinction between an action on the contract at law and an action for equitable rescission was of great significance because of the artificial separation between law and equity. Equity would not assume jurisdiction when the plaintiff had a clear remedy at law. . . . It followed that once an action to enforce a contract was commenced at law, the party holding a right to rescind was expected to raise that as a defense rather than bring a new action in equity.
>
> The rule that equitable rescission would not be permitted where there was an adequate remedy at law, taken together with the rule that an applicant's fraud could be raised as a defense to an action on the policy, clarifies what is meant by Insurance Code section 650's limitation on the right of an insurer to rescind the policy to the time "previous to the commencement of an action on the contract." *The Legislature intended that the insurer be precluded from rescinding once the insured had proceeded with an action to enforce the insurance contract at law.* (See 17 Couch on Insurance (2d ed. 1983) § 67:382, p. 792 ["In some jurisdictions, the fact that the insured or the beneficiary has commenced an action on the policy is said to bar a separate action for the judicial rescission of the policy, the insurer in such circumstances being relegated to raising the ground for rescission as a defense in the action on the policy. So it has been held that if an action has been brought to enforce a contract of insurance such suit affords an adequate remedy which defeats jurisdiction in equity of a separate suit to cancel the policy; and where an action at law had been begun on the policy to which the insurer could set up fraud as a defense, equity should not entertain a suit to cancel the policy"].) *The point was merely to guarantee that resort to equity was not needlessly made where the insurer had ample opportunity to raise the same issues in defense of the action on the policy.* As we have indicated in our earlier discussion, California law affords that opportunity to insurers where the insured fires the first shot.

*Id.* at 166 (internal citations omitted) (emphasis added). As this discussion makes clear, although St. Paul was precluded from unilaterally rescinding once Atmel filed suit, St. Paul is not barred from "rais[ing] the same issues in defense of the action on the policy." *Id.*

The Court does not view Section 650 as providing a substantive advantage to the insured in the event that the insured files suit before the insurer has rescinded the policy. Atmel seeks a ruling from this Court that the insurance policies are currently in effect and that St. Paul is currently in breach of the duties imposed by those policies. This is the same result that Atmel sought in its first motion for summary judgment. In that motion, Atmel contended that St. Paul had breached its duty to defend, notwithstanding St. Paul's allegations of rescission, and that St. Paul was liable for Atmel's defense costs unless and until it was adjudicated that the policies were rescinded.

However, as the Court previously held in rejecting that argument, because rescission is retroactive to the time that the representation becomes false, if St. Paul is entitled to rescission, then it

6

never owed Atmel a duty to defend. There is no dispute that St. Paul is permitted to raise rescission as an affirmative defense, and Atmel agrees that if St. Paul prevails on its affirmative defense, the policies are rendered void *ab initio*. Because a valid rescission voids a policy *ab initio*, and because both plaintiff's attempted enforcement of and defendant's attempted rescission of the policy are being decided in this one action, any preliminary declaration that the policies "are currently in effect" or that St. Paul is currently "in breach of its duties" would be inappropriate. "[R]escission is 'from the time the time the representation becomes false,' (Ins. Code, § 359), and, of necessity, will avoid liability even on *pending* claims. . . . Thus, a rescission effectively renders the policy totally unenforceable from the outset so that there never was any coverage and no benefits are payable.." *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 182 (1988) (emphasis in original); *see also Williams v. Amerus Life Ins. Co.*, 2005 WL 1847111 (Aug. 3, 2005 S.D. Tex), 2005 WL 1847111 at *3 (rejecting plaintiff insureds' argument that § 650 barred insurer from seeking rescission, and deciding defendant insurer's claim/defense of rescission first because if valid would render plaintiff insureds' claims moot).

The practical effect of the Court's ruling is limited. The Court simply holds that, under Section 650, St. Paul was precluded from unilaterally rescinding the insurance policies after Atmel filed suit to enforce the policies. Atmel is free to argue to the jury that, *inter alia*, St. Paul had a duty to defend Atmel under these policies, that St. Paul acted in bad faith by refusing to defend, and that because Atmel did not misrepresent or conceal any material information when it applied for insurance, the policies are currently valid and St. Paul is not entitled to rescission. Conversely, St. Paul is free to argue to the jury that, because Atmel concealed and misrepresented material information when it applied for insurance, St. Paul is entitled to rescission, the policies are void *ab initio*, and that thus St. Paul had no duty to defend and did not act in bad faith. Appropriately crafted jury instructions will allow the jury to decide the necessary facts.

Atmel also contends, relying on *Resure*, that St. Paul is not allowed to counterclaim for rescission. However, *Resure* does not hold that an insurance company may not counterclaim for rescission. St. Paul has cited authority suggesting that it can proceed by counterclaim in addition to raising rescission as an affirmative defense. *See* Cal. Civ. Code § 1692 ("When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by

7

(a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) *asserting such rescission by way of defense or cross-complaint*.") (emphasis added); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 295 (2001) (Werdegar, J., dissenting on ground majority rescinded contract on defendant's behalf when defendant had not requested rescission) ("Rescission may be asserted in an answer or cross-complaint, or by other notice to the nonrescinding party. (Civ. Code §§ 1691, 1692).").

Accordingly, the Court GRANTS IN PART Atmel's motion for partial summary judgment. The Court DENIES the motion to the extent that Atmel seeks to strike St. Paul's counterclaim for rescission.

**2.      St. Paul's Motion for Summary Judgment: Rescission**

St. Paul moves for summary judgment on all of the claims contained in the Complaint, and to the extent that the issues overlap with the relief sought by St. Paul's counterclaim, St. Paul moves for judgment on that counterclaim as well. St. Paul contends that the undisputed facts show that Atmel obtained the St. Paul policies through misrepresentation and concealment of material facts and that the policies are therefore void *ab initio* as a matter of law. In response, Atmel contends that the evidence shows, at a minimum, that there are disputed issues of fact sufficient to defeat summary judgment, and further, that the facts demonstrate that Atmel is entitled to partial summary judgment on St. Paul's rescission defense.

The Court looks to three factors in determining whether an insurance company has the right to rescind: (1) whether the insured misrepresented or concealed information in its application for insurance; (2) whether the information misrepresented or concealed was material; and (3) whether the insured knew that it had made a material misrepresentation or concealment. *See Federal Ins. Co. v. Curon Med. Inc.*, 2004 WL 2418318 at *4 (N.D. Cal. Oct. 28, 2004).[3] Applying these factors to the

---

[3] Several of the relevant provisions of the Insurance Code contained in Article 1, "Concealment," are the following:

Cal. Ins. Code ss 330: "Neglect to communicate that which a party knows, and ought to communicate, is concealment."

8

instant case, the Court concludes that there are genuine issues of fact as to whether Atmel misrepresented or concealed information in its application, and whether the information that was not disclosed was material. Accordingly, the Court concludes that summary judgment in favor of either party is inappropriate.

### A. Did Atmel conceal information about the *Seagate* issues?

St. Paul contends that Atmel concealed information about the Seagate issues when it applied for insurance during the Fall of 2001. In support of its motion, St. Paul has submitted evidence that beginning in August or September 2001, Atmel employees became aware that the red phosphorous mold compound used in Atmel's chip packaging process was potentially associated with failures of disk drives. St. Paul's evidence also shows that throughout the Fall of 2001, and continuing up until the date that Atmel completed its application for insurance on December 20, 2001, Atmel employees were involved in numerous telephone conferences and face to face meetings regarding the problems. St. Paul's evidence also shows that the chip problems were of significant concern to Atmel's customer, Seagate, and that by the end of October 2001, Seagate sent an employee (Victor Terry Scott, later replaced by Ray Mikkonen) to work full-time at Atmel's corporate headquarters in San Jose on the issues associated with Atmel's use of the mold compound. St. Paul has also submitted the deposition testimony of St. Paul underwriter Ken Falvey, who underwrote the Atmel account, in which he testified that St. Paul would not have issued the policies to Atmel if it had known the information about the Seagate and red phosphorous issues.

In response, Atmel has submitted a considerable amount of evidence in an effort to show that, at the time it applied for insurance in December 2001, no one at Atmel believed that the problems associated with the mold compound might lead to a claim, and thus Atmel did not conceal or

---

Cal. Ins. Code ss 331 "Concealment, whether intentional or unintentional, entitles the injured party to rescind."

Cal. Ins. Code ss 332: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

9

misrepresent information on the insurance applications. Atmel has submitted evidence showing, *inter alia*, that of Atmel's many customers who bought chips containing the mold compound, only Seagate pressed its concerns; that of Seagate's many customers, the focus in Fall 2001 was only on one, Sun Microsystems; and that of Sun Microsystems' customers who bought Seagate drives with the Atmel chips at issue, only one location (NTT DoCoMo in Japan) was experiencing problems. Scott Decl. ¶¶ 14-15, Cusack Decl. Tab D at 198-99; Tab H at 45-46, 74-75; Tab P at 143. Atmel has submitted evidence that because, during the Fall of 2001, the problems were limited to the single DoCoMo site, those involved did not believe there was a systemic problem but rather that the failures might reflect a specific lot or lots issue, a site-specific customer application and/or environmental factors. Scott Decl. ¶ 16.

Atmel has also submitted evidence that the "risk model" developed at a meeting in Japan regarding the mold compound issues on December 17-18, 2001, before Atmel finalized its insurance application, concluded that "most sites" would have a "0.00 %" probability of drive failure due to the mold compound. Cusack Decl. Ex. II, Ex. 203.[4] The risk model concluded that, "The entire population will see a failure rate in the single-digit DPPM [Defective Parts Per Million] range since most sites have humidity from 40% to 50%." *Id.* For every million Seagate drives with an Atmel chip containing the mold compound, Seagate anticipated that less than 10 drives would fail because of the issue. *Id.*[5]

Atmel has also submitted the Declaration of Victor Terry Scott, a former Seagate employee. In the Fall of 2001, Mr. Scott was Seagate's Supplier Quality Engineering Project Manager, and he was the primary point of contact at Seagate for the communications between Seagate and Atmel in Fall of 2001 concerning the technical investigation and analysis regarding the mold compound. Scott Decl. ¶ 8. Mr. Scott states, *inter alia*, that "[i]t was very common for Seagate to provide on-site support to a supplier if an issue with that supplier's parts arose; therefore, I disagree with any contention that the fact

---

[4] The meeting in Japan was attended by engineers from Atmel, Seagate, Sumitomo (the manufacturer of the mold compound), and two of Atmel's subcontractors, Amkor and ChipPAC. Bryant Decl. ¶ 8. The purpose of the meeting was to confirm the root cause analysis of the Seagate drive failure and to develop a risk assessment to estimate the number of drives already in the field that were at risk of failure to the mold compound. *Id.*

[5] St. Paul emphasizes other language in the risk model concluding that there would be a higher failure rate at some sites.

10

that I was stationed at Atmel for multiple weeks would, in and of itself, be an indicator that this was an issue of such large scope to warrant any field recall or planned legal action during this discovery phase of failure analysis in Fall 2001." *Id.* at ¶ 11. Mr. Scott also states that during the Fall of 2001, he was not aware of any discussion between Seagate and Atmel, or within Seagate internally, about placing responsibility upon Atmel for the mold compound problems. *Id.* at ¶ 23. In addition, Mr. Scott states that he was not aware of any discussion regarding demanding compensation from Atmel, or bringing a lawsuit against Atmel concerning the Sumitomo compound issue. *Id.*

The burden of proof is on the insurer to establish misrepresentation or concealment. *See Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 909, 919 (1973). Based upon the record before the Court, and taking the evidence in the light most favorable to Atmel, the Court concludes that there is a triable issue of fact as to whether Atmel misrepresented or concealed information when it applied for insurance. A reasonable "person" in the place of Atmel could, in December of 2001, have concluded that information about the Seagate problems was not called for in the applications for insurance.[6] Accordingly, the Court DENIES St. Paul's motion for summary judgment. However, because the evidence could also support the opposite conclusion, the Court also DENIES Atmel's request for partial summary judgment.

**B.    Was the information about the *Seagate* issues "material?"**

St. Paul contends that the information allegedly concealed by Atmel was material as a matter of law. St. Paul cites California Insurance Code Section 334, which provides,

> Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.

---

[6] The parties dispute whether the "ACORD" application is relevant. The "ACORD" application is a standard industry application (not created by St. Paul), that Atmel's insurance broker submitted to St. Paul as part of Atmel's application for CGL insurance. The Court concludes that because Atmel's complaint alleges that St. Paul owed Atmel a duty to defend under both the Errors and Omissions coverage and the CGL coverage, the ACORD application – and Atmel's responses thereto – are relevant to St. Paul's counterclaim and defense of rescission.

11

Cal. Ins. Code § 334. St. Paul contends that where an insurer asks questions regarding potential claims as part of its application process, the answers to those questions are deemed to be material as a matter of law. *See Wilson v. Western Nat'l Life Ins. Co.*, 235 Cal. App. 3d 981, 993 (1991). St. Paul has submitted the declaration of its underwriter, which states that if he had known about the Seagate issues he would not have issued the policies to Atmel. Thus, St. Paul argues, because information about the Seagate issues was material to St. Paul, St. Paul is entitled to summary judgment.

St. Paul is only partially correct in its statement of the law. As the California Supreme Court recently stated, while the questions contained on an insurance application are usually in themselves sufficient to establish materiality as a matter of law, there are situations in which materiality may be a question of fact. *See Mitchell v. United Nat'l Ins. Co.*, 127 Cal. 4th 457, 474 (2005); *see also* Hon. Walter Croskey *et al.*, <u>California Practice Guide: Insurance Litigation</u> 5:229 ("Where the facts are undisputed and reasonable minds could not disagree on their impact, materiality may be determined as a matter of law (e.g., on a motion for summary judgment, nonsuit, or directed verdict). This may be the case where the information withheld is substantial, the application's falsity is apparent or the insurer's proof of reliance thereon is uncontradicted.").

Ultimately, the "critical question is the effect truthful answers would have had on [the insurer]." *Sogomonian*, 198 Cal. App. 3d at 181. St. Paul places great emphasis on the testimony of its underwriter, Ken Falvey, that he would not have insured Atmel if he had known about the Seagate issues. Although such evidence is probative of materiality, as the California Supreme Court has stated in a case repeatedly cited by St. Paul, "the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed." *Id. Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916 (1973).

More importantly, the Court concludes that Atmel has raised a genuine issue of fact regarding whether information about the Seagate issues was material to St. Paul. Atmel has submitted evidence showing that in the Fall of 2002 through January 2003, after Atmel had tendered the *Seagate* Action to St. Paul, St. Paul renewed Atmel's insurance policies. The underwriter handling Atmel's renewal, Mr. Falvey, was aware that Atmel had tendered the *Seagate* action (which alleged, *inter alia*, that Seagate informed Atmel in October 2001 of the problems with the chips, Cusack Decl. Ex. FF at ¶ 10), and prior

12

to renewing the policies Mr. Falvey had at least one conversation with the St. Paul employee handling the tender of the *Seagate* Action, Mr. Runkel. Despite Mr. Falvey's awareness of the *Seagate* Action, during the renewal process he did not request any information from Atmel regarding the *Seagate* Action, nor did he request information from Atmel concerning Atmel's knowledge of the Seagate issues in December 2001 when it initially applied for insurance, or of Atmel's knowledge of the Seagate issues in the Fall of 2002 when it sought to renew. Taking the facts in the light most favorable to Atmel, as the Court is required to do on St. Paul's motion for summary judgment, the Court finds that Atmel has raised a question of fact as to materiality. *See* Croskey *et al.*, California Practice Guide: Insurance Litigation 5:227 ("Claims of materiality can be attacked by showing the insurer failed to treat the alleged information as important when it first became aware of it."), *citing Olson v. Standard Marine Ins. Co.*, 109 Cal. App. 2d 130, 137-39 (1952).

However, the Court is not persuaded by Atmel's arguments that the evidence clearly demonstrates that St. Paul waived its right to rescind. As an initial matter, the burden of proof is on Atmel to establish that St. Paul *intentionally* relinquished a known right after knowledge of the facts. *See Waller v. Truck Ins. Exch. Co.*, 11 Cal. 4th 1, 34 (1995); *Lunardi v. Great-West Life Assur. Co.*, 37 Cal. App. 4th 807, 824 (1995). Although Atmel has raised a triable issue of fact as to the materiality of information about the Seagate problems, Atmel's evidence certainly does not show beyond dispute that St. Paul intentionally relinquished its right to rescind after knowledge of the facts.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART plaintiff's motion for partial summary judgment (Docket No. 276) and DENIES defendant's motion for summary judgment. (Docket Nos. 373, 384).

**IT IS SO ORDERED.**

Dated: February 21, 2006

SUSAN ILLSTON
United States District Judge

13