IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ATMEL CORPORATION,

    Plaintiff,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

    Defendant.

No. C 04-04082 SI

**ORDER DENYING IN PART AND GRANTING IN PART ST. PAUL'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: BAD FAITH AND PUNITIVE DAMAGES**

On March 17, 2006, the Court heard oral argument on defendant St. Paul's motion for partial summary judgment re: bad faith and punitive damages.[1] After careful consideration of the parties' papers and the arguments of counsel, the Court DENIES IN PART and GRANTS IN PART St. Paul's motion for partial summary judgment regarding bad faith and punitive damages.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-

---

[1] At the same time, the Court heard oral argument on St. Paul's motions for partial summary judgment relating to collateral source issues and relating to CGL coverage. The other motions will be addressed by separate order.

moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

In its orders filed October 11, 2005 and February 21, 2006, the Court set forth the background facts to this lawsuit. The Court incorporates those facts herein.

**1. St. Paul's Motion for Partial Summary Judgment re: Bad Faith Claim**

   **A. Lack of Bad Faith/Genuine Dispute**

St. Paul seeks partial summary judgment on Atmel's bad faith claim, contending that it is entitled to judgment as a matter of law because there was a "genuine dispute" between St. Paul and Atmel concerning St. Paul's duty to defend Atmel in the *Seagate* action, and that various elements of Atmel's bad faith claim fail as a matter of law.

Each side has submitted voluminous declarations with attached evidence in support of its claim that St. Paul acted reasonably (St. Paul's position) or unreasonably (Atmel's position) during the period of time after Atmel tendered the *Seagate* action to St. Paul. Atmel contends that the "dispute" about coverage was not "genuine" but rather a pretextual effort to avoid providing a defense that St. Paul realized it owed. Atmel also contends that the "genuine dispute" doctrine is fundamentally incompatible with third party claims such as Atmel's tender of the *Seagate* action, citing case law providing that an

2

insurance carrier must provide its insured with a defense of all claims that create even a potential for coverage.

Assuming without deciding that the "genuine dispute" doctrine applies to third party claims such as Atmel's tender of the *Seagate* action, the Court nevertheless concludes that summary judgment on the bulk of Atmel's bad faith claim is not appropriate. Atmel's evidence is sufficient to raise a jury issue as to whether St. Paul's conduct post-tender amounted to bad faith, except with regard to several discrete issues discussed *infra*. After reviewing the admissible evidence[2] submitted by the parties, the Court cannot conclude that, as a matter of law, St. Paul acted reasonably in refusing to defend Atmel and contribute to the *Seagate* settlement, and in ultimately rescinding the policy.

### B. Nonrenewal/Increased Insurance Premiums

Atmel specifically challenges St. Paul's refusal to renew the insurance policies as bad faith. Atmel argues that it was damaged by St. Paul's failure to renew because Atmel was forced to "scramble" to seek new insurance. Atmel also contends that it was damaged by St. Paul's nonrenewal because Atmel had to disclose to prospective insurers the reason for St. Paul's nonrenewal, namely that St. Paul believed that Atmel had engaged in misrepresentation in the application process. Atmel contends that the statement in the nonrenewal that Atmel had made misrepresentations, combined with the timing of the nonrenewal, caused prospective insurers to charge substantially higher premiums.

St. Paul contends that, as a matter of law, Atmel cannot bring a bad faith claim challenging St. Paul's failure to renew the policies. The Court agrees. "Except as limited by statute [in connection with automobile and homeowners insurance], an insurer has no legal duty to renew an insurance policy after expiration of its term and refusing to renew does *not* breach the insurer's implied covenant of good faith and fair dealing with the insured." Hon. Croskey *et al.*, California Practice Guide: Insurance Litigation 5:86 (2005) (emphasis in original) (citing *Travelers Ins. Co. v. Lesher*, 187 Cal. App. 3d 169, 194 (1986), *disapproved on other grounds in Buss v. Superior Court*, 16 Cal. 4th 35 (1997), and *Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 338 (1992)).

---

[2] St. Paul's objections to Atmel's evidence are addressed *infra*.

3

In *Travelers Insurance Company v. Lesher*, an insurance company appealed the trial court's decision to allow the insured to testify that the company had not renewed the insurance policy. 187 Cal. App. 3d at 194. The court agreed that evidence of nonrenewal was irrelevant:

> Unless the policy provides otherwise, an insurer has no legal duty to renew an insurance policy when its term has expired. Ordinarily, therefore, an insured cannot base a cause of action for bad faith on nonrenewal, even if there is a coverage dispute between the insurer and insured over a prior claim.

*Id.*

Another court reached a similar decision in *Mock v. Michigan Millers Mutual Insurance Company*, 4 Cal. App. 4th 306 (1992). In *Mock*, the plaintiff insureds brought a bad faith action against their homeowners insurer regarding the company's handling of a claim. The plaintiffs claimed that the insurance company's failure to renew their policy was evidence of its "evil motive." *Id.* at 338. The court rejected that argument, stating that "an insurer is always free to refuse to incur an unacceptable risk and Michigan Millers was under no obligation to renew the policy." *See also Schmimmel v. NORCAL Mut. Ins. Co.*, 39 Cal. App. 4th 1282, 1283 (1995) ("There is currently no tort liability in California for refusal to renew a professional liability insurance policy for reasons in violation of public policy. Whether such liability should be imposed is a matter for the people of California to decide, either by initiative or through the Legislature. We may not legislate on the subject in their stead.").

The courts have made clear that "in the absence of statutory provisions to the contrary, an insurer may refuse to renew a term policy 'for any reason, or for no reason at all.'" *Id.* at 1285 (quoting *Greene v. Safeco Ins. Co.*, 140 Cal. App. 3d 535, 538 (1983)). Here, Atmel has not identified any statutory provision barring St. Paul's refusal to renew the term policy, nor is the Court aware of any such provision. *Cf.* Cal. Ins. Code § 663.5(a)-(b) (imposing restrictions on automobile insurers' right to refuse renewals); Cal. Ins. Code § 675(c) (imposing restrictions on homeowners insurers' right to refuse renewals); Cal. Ins. Code § 10086.5(b) (same).

The cases cited by Atmel are inapposite, as they all deal with the cancellation of insurance policies, not the failure to renew. *See e.g., Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 906 (1992) ("Cancellation provisions in an insurance contract are subject to the implied covenant of good faith and fair dealing just like any other clause."); *Spindle v. Travelers Ins. Cos.*, 66 Cal. App. 3d

951, 958 (1977) (same); *Harman v. American Cas. Co. of Reading, Pa.*, 155 F. Supp. 612, 614 (S.D. Cal. 1957) (granting insured's declaratory relief action to forestall cancellation of policy).

Accordingly, the Court GRANTS St. Paul's motion for partial summary judgment on Atmel's bad faith claim to the extent that Atmel challenges St. Paul's failure to renew the policy as bad faith.[3]

### C. Cal. Ins. Code § 650

The Court also GRANTS St. Paul's motion to the extent that Atmel seeks to base its bad faith claim on California Insurance Code Section 650. Atmel's opposition suggests that it plans to submit "evidence" that St. Paul unilaterally rescinded in violation of Section 650 after Atmel filed suit, and that "St. Paul's disregard to Atmel's right to fair treatment under the law is the type of evidence a jury could easily conclude warrants a finding of bad faith and punitive damage liability." Atmel's Opposition at 24:11-14. Atmel's argument in this regard is contrary to this Court's February 21, 2006 order. In that order, the Court held that under Section 650, St. Paul was precluded from unilaterally rescinding the policies after Atmel filed suit. However, as the Court emphasized in that order, the practical effect of that ruling was "limited," and the Court stated that it "does not view Section 650 as providing a substantive advantage to the insured in the event that the insured files suit before the insurer rescinds the policy." Order at 6, 7. Atmel is free to argue to the jury that St. Paul's refusal to defend and rescission was in bad faith. However, Atmel may not argue that St. Paul acted in bad faith on the basis of St. Paul's failure to comply with Section 650.

### D. "Fraud and Misrepresentation" Clause

Similarly, the Court GRANTS St. Paul's motion to the extent Atmel seeks to base its bad faith claim on the "Fraud and Misrepresentation" clause contained in the policy. In a footnote in its opposition, Atmel states that "this Court's ruling interpreting the policy's Fraud & Misrepresentation Clause cannot *in hindsight* insulate St. Paul from its bad faith action and blatant lack of knowledge about

---

[3] In light of the disposition of this motion, St. Paul's motion for partial summary judgment on Atmel's claim for increased insurance premiums is DENIED AS MOOT. For that reason, the Court does not address the parties' arguments and evidence regarding whether Atmel's claim for damages as a result of the nonrenewal is speculative.

5

a clause in its own policy that is also widely used in the insurance industry." Atmel's Opposition at 23 n. 13. Atmel has already unsuccessfully sought reconsideration of this Court's October 11, 2005 order, which held that this clause does not apply to St. Paul's rescission, and thus that St. Paul does not need to prove that Atmel engaged in intentional fraud in order to justify its rescission.

Citing *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993), Atmel argues that when policy language could exclude or include coverage, the carrier must construe the language in the insured's favor. Presumably Atmel is arguing that prior to this Court's October 11, 2005 order, it was unclear whether the Fraud and Misrepresentation clause required intentional fraud in order to rescind, and thus, notwithstanding this Court's October 11, 2005 holding to the contrary, Atmel is entitled to argue that St. Paul's rescission was in bad faith because Atmel did not engage in intentional fraud. Not only is this contention an impermissible attempt to get a third bite at the apple, but this argument finds no support in *Montrose. Montrose* held that where policy language is ambiguous and could be read to exclude or include coverage, the policy must be construed "in the insured's favor, according to his reasonable expectations." *Id.* at 299. Here, the Court's October 11, 2005 order did not find any ambiguity in the Fraud and Misrepresentation clause. *See* Order at 11-13.

Accordingly, as set forth above, the Court DENIES in part and GRANTS in part St. Paul's motion for partial summary judgment on Atmel's bad faith claim.

### 2. Punitive Damages

St. Paul contends that Atmel's evidence in support of its claim for punitive damages is insufficient. After review of the parties' evidence, the Court cannot conclude as a matter of law that Atmel's evidence is insufficient to warrant the award of punitive damages, and accordingly DENIES St. Paul's motion with respect to the punitive damage claim.

### 3. St. Paul's Objections to Atmel's Evidence

St. Paul has filed objections to evidence submitted by Atmel in opposition to the motion for partial summary judgment on the bad faith claims. St. Paul also requests that the Court admonish Atmel that it may not use confidential settlement negotiations or conduct subject to the litigation

6

privilege of California Civil Code § 47(b) as evidence in this lawsuit.

### A. Evidence of Confidential Settlement Negotiations

St. Paul objects to (1) evidence referring or otherwise relating to statements or conduct concerning a September 23, 2004 meeting between Atmel and its counsel and St. Paul and its counsel; and (2) evidence referring or otherwise relating to statements or conduct concerning an April 13, 2005 mediation of the underlying *Seagate* action. St. Paul contends that this evidence is inadmissible pursuant to Federal Rule of Evidence 408, California Evidence Code § 1152, California Civil Code § 47(b), and/or a *White v. Western Insurance Company* waiver executed by the parties.

#### (1) September 23, 2004 Meeting

Atmel asserts that the written confidentiality agreement that it signed (Goodman Decl. Ex. B) is unenforceable because St. Paul breached the agreement by copying Atmel's insurance broker, ABD, on St. Paul's November 2, 2004 rescission letter. The Court rejects this contention for two reasons. First, the only discussion in the November 2, 2004 letter of the September 23, 2004 meeting is a reference to the facts that the meeting occurred, that Atmel made St. Paul a settlement proposal, and that Atmel filed suit before the deadline for St. Paul's response. The November 2, 2004 letter does not disclose the substance of any confidential settlement discussions. Second, as St. Paul correctly notes, Atmel has previously contended, and this Court agreed, that the attorney-client privilege extended to communications between Atmel and ABD. *See* August 31, 2005 Order re: ABD Documents.

Similarly, St. Paul did not breach the confidentiality agreement by filing pleadings with this Court referencing the above-mentioned facts. None of the pleadings at issue discuss the substance of the settlement offer made by Atmel, or otherwise disclose any specific information about the September 23, 2004 discussions.

Finally, the fact that St. Paul's lawyers asked Atmel's witnesses questions regarding the September 23, 2004 meeting does not mean that St. Paul breached the confidentiality agreement. As an initial matter, the Court notes that the colloquy between counsel prior to the questioning of Ms. Bright shows that St. Paul's counsel pursued this line of questioning only after (1) stating that he did

7

so because Atmel had indicated its view that confidentiality had been breached; (2) stating that he would not pursue that line of questioning if Atmel's counsel instructed the witness not to answer, to which Atmel's counsel responded, "If you want to ask her about that meeting, that's fine with me"; and (3) stating, in response to a question from Atmel's counsel regarding St. Paul's counsel's view on the September 23, 2004 meeting, that "[w]hether the meeting is subject to admission at trial is not my decision to make." Bright Depo. at 109. Moreover, the Court does not view asking questions during a deposition to be "use" of any confidential information in violation of the parties' agreement; St. Paul has not sought to introduce the deposition testimony in connection with this litigation and indeed seeks to preclude its admission.

For these reasons, the Court concludes that the parties' confidentiality agreement remains in effect and precludes either party from introducing evidence relating to the September 23, 2004 meeting. Accordingly, the Court does not reach Atmel's arguments regarding *White v. Western Title Ins. Co.*, 40 Cal. 3d 870 (1985), because Atmel explicitly waived any rights it may have under that case. In addition, the Court concludes that the probative value of this evidence is, at best, minimal, and that it should be excluded pursuant to Federal Rule of Evidence 403. Accordingly the Court SUSTAINS St. Paul's objection and STRIKES the following: (1) Docket No. 508, Cusack Decl. Tab A (Bright Depo. at 106:14-114:25); and (2) Docket No. 508, Cusack Decl. Tab H (Mar-Spinola Depo. at 120:24-121:4).

### (2) *Seagate* Mediation

Atmel has introduced evidence regarding an April 13, 2005 mediation in the underlying *Seagate* action for the purpose of establishing that St. Paul attended the mediation. Atmel wishes to show both that St. Paul attended the mediation and that St. Paul did not pay any money to the *Seagate* settlement.

The Court concludes that St. Paul's presence at the *Seagate* mediation is not confidential or privileged. Similarly, the fact that St. Paul did not contribute monies toward the *Seagate* defense or settlement is not privileged. The Court OVERRULES St. Paul's objections and DENIES St. Paul's motion to strike the evidence at issue.

### B.     Evidence of "Litigation Conduct"

St. Paul objects to following evidence submitted by Atmel on the ground that it is inadmissible pursuant to the litigation privilege set forth in California Civil Code § 47(b): (1) a November 5, 2004 letter from Atmel's counsel to St. Paul and its counsel rejecting St. Paul's rescission; (2) the transcript of the October 7, 2005 summary judgment hearing in this case; and (3) the transcript of an October 10, 2005 "meet and confer" between the parties regarding allegedly privileged documents that Atmel turned over to St. Paul prior to this litigation. In addition, although Atmel has not submitted evidence of the following, St. Paul contends that Atmel seeks to obtain a substantive advantage by arguing about (1) St. Paul's conduct in filing a motion for intra-district transfer to San Jose; and (2) the arguments *not* made by St. Paul in its various motions for summary judgment.

California Civil Code Section 47(b) provides a privilege for any "publication or broadcast" made in any "judicial proceeding." Cal. Civ. Code § 47(b). The California Supreme Court has described the privilege as follows:

> [T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990) (internal citations omitted).

### **(1) November 5, 2004 letter**

Atmel has submitted a November 5, 2004 letter from Atmel's counsel to St. Paul's counsel to establish that Atmel rejected St. Paul's rescission and that Atmel had placed St. Paul was on notice that Atmel considered St. Paul to have breached the confidentiality agreement. The Court has already concluded that St. Paul did not breach the confidentiality agreement, and thus the probative value of this letter is limited to establishing the fact that Atmel rejected St. Paul's tender of rescission, a fact no one disputes. The Court SUSTAINS St. Paul's objection and STRIKES the following: Docket No. 509, Cusack Decl., Tab JJ.

.

### **(2) Transcript of October 7, 2005 hearing**

Atmel has submitted the statements of St. Paul's counsel regarding California Civil Code Section 650 as "corroborating evidence that St. Paul, at the time it attempted to tender unilateral rescission, knew that Section 650 barred it from doing so." Atmel's Response at 8:20-21. For the reasons discussed *supra*, the Court holds that Atmel cannot seek to hold St. Paul liable for bad faith based on its failure to comply with Section 650. Accordingly, the Court SUSTAINS St. Paul's objections and STRIKES the following: Docket No. 510, Cusack Decl., Tab CCC.

### (3) Transcript of October 10, 2005 "meet and confer"

Atmel has submitted a transcript of a "meet and confer" session between counsel during this litigation. Atmel argues that the transcript is evidence of St. Paul's act of bad faith in refusing to return allegedly privileged documents that Atmel provided to St. Paul prior to the inception of this litigation. The Court notes that it does not appear from the docket that Atmel has ever filed a motion to compel the return of these documents.

Atmel relies on *White v. Western Title Ins. Co.*, 40 Cal. 3d 870 (1985), to argue that the meet and confer is admissible. However, *White* simply held that an insured may introduce evidence of settlement offers made by an insurance company as evidence of the company's bad faith. There is no support in *White* or elsewhere for the proposition that counsel's statements in a meet and confer session are admissible as evidence of bad faith. *See California Physicians' Serv. v. Superior Court*, 9 Cal. App. 4th 1321, 1328-30 (1992) (noting courts' limited application of *White*). The Court concludes that statements of counsel during a meet and confer are privileged litigation communications, and accordingly SUSTAINS St. Paul's objections and STRIKES the following: Docket No. 510, Cusack Decl., Tab DDD.

### (4) Other statements made (or not made) by counsel in St. Paul's pleadings

St. Paul asserts, and Atmel does not deny, that Atmel intends to introduce "evidence" in the form of St. Paul's pleadings in this case to argue that St. Paul has engaged in bad faith. The Court concludes that St. Paul's pleadings in this case are privileged litigation communications, and holds that Atmel is

precluded from introducing St. Paul's pleadings as evidence in this case. *See id.[4]*

### C. Evidence Regarding the "Fraud and Misrepresentation" Clause

St. Paul objects to certain deposition testimony as irrelevant and on Rule 403 grounds. For the reasons discussed *supra*, the Court agrees and SUSTAINS St. Paul's objections. The Court hereby STRIKES the following: (1) Docket No. 508, Cusack Decl., Tab D, Deposition of Bonita Girard at 108:2-109:12; and 128:16-129:24; and (2) Docket No. 508, Cusack Decl., Tab M, Deposition of James Runkel at 143:2-145:25.

### D. Evidence Regarding Cal. Ins. Code § 650

St. Paul moves to strike deposition testimony regarding the timing of St. Paul's rescission and its failure to comply with California Insurance Code Section 650. For the reasons discussed *supra*, the Court agrees that Atmel may not introduce evidence that St. Paul's rescission did not comply with Section 650. Accordingly, the Court SUSTAINS St. Paul's objections and STRIKES the following: Docket No. 508, Cusak Decl., Tab B, Deposition of Rahpael Cotkin at 36:3-37:25; 48:2-49:25; 94:3-95:24.

### E. Evidence Regarding Profitability of St. Paul's Technology Business

St. Paul moves to strike deposition testimony regarding the profitability of St. Paul's technology business on the ground that Atmel has not submitted any evidence showing a connection between St. Paul's profitability and its conduct handling Atmel's claims. The Court DENIES St. Paul's objections without prejudice to renewal at trial.

---

[4] The Court notes that Atmel's opposition does not directly discuss St. Paul's motion for intra-district transfer – the motion that St. Paul states Atmel wants to introduce into evidence – but instead simply asserts that St. Paul "fail[ed] to disclose the Cirrus Logic case, and that this failure to disclose constitutes "conduct" not "communications." The instant ruling is limited to precluding Atmel from introducing St. Paul's pleadings in this case as evidence; if Atmel wishes to introduce other evidence regarding St. Paul's failure to disclose the Cirrus Logic case, the Court will rule on the admissibility of that evidence at that time.

11

### F. Evidence About Royal's Claims Handling

St. Paul objects to evidence about Royal's claims handling on the ground that such evidence is not probative of whether St. Paul handled Atmel's claim properly and in good faith. The Court agrees that Royal's handling of the *Seagate* matter is of limited probative value with respect to whether St. Paul breached its duties to Atmel. However, the fact that Royal contributed to the *Seagate* defense and settlement is relevant as part of the factual framework of this case. The Court DENIES St. Paul's objections without prejudice to renewal at trial.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES IN PART and GRANTS IN PART St. Paul's motion for partial summary judgment re: bad faith and punitive damages (Docket No. 322), DENIES AS MOOT St. Paul's motion for partial summary judgment on Atmel's claim for increased insurance premiums (Docket No. 340), and SUSTAINS in part and OVERRULES in part St. Paul's Objections to Atmel's Evidence. (Docket No. 528).

**IT IS SO ORDERED.**

Dated: March 21, 2006

SUSAN ILLSTON
United States District Judge