IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATMEL CORPORATION, | No. C 04-04082 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: COLLATERAL SOURCE RULE** |
| v. | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | |
| Defendant. | |

On March 17, 2006, the Court heard oral argument on defendant St. Paul's motion for partial summary judgment re: collateral source rule. After careful consideration of the parties' papers and the arguments of counsel, the Court GRANTS St. Paul's motion.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

In its orders filed October 11, 2005 and February 21, 2006, the Court set forth the background facts to this lawsuit. The Court incorporates those facts herein.

Atmel is seeking as tort damages its *Brandt* fees, which are the fees reasonably incurred by an insured to compel payment of benefits due under an insurance policy. *See Brandt v. Superior Court*, 37 Cal. 3d 813, 187 (1985). Atmel is seeking as contract damages the amounts that Atmel paid toward the *Seagate* defense ($3,589,958) and settlement ($4,650,000). Atmel is also seeking, as Royal's assignee, "at least" one-half of the amounts paid by Royal in the defense and settlement (at least $2,557,518). Thus, setting aside *Brandt* fees and punitive damages, Atmel is seeking over $10,797,476 in compensatory damages, although it has paid out a total of $8,239,958.

In addition, however, Atmel is seeking as damages 100% of the amount that Royal paid toward the *Seagate* defense and settlement, based on the collateral source rule.[1] In the *Seagate* action, Royal paid $3,865,036 of Atmel's total defense costs of $7,454,994 and Royal contributed $1,250,000 to the $5,900,000 settlement. Atmel contends that it is entitled to the $5,115,036 that Royal paid to defend and settle the *Seagate* action pursuant to the collateral source rule, which denies an offset to an insurer

---

[1] In its opposition memo, Atmel initially states that its request for recovery of 100% of Royal's payments under the collateral source doctrine is not necessarily "inconsistent" with its request for recovery of one-half of Royal's payments based on Royal's assigned right to equitable contribution from St. Paul. *See* Atmel's Memo in Opposition to Motion for Partial Summary Judgment (Collateral Source Rule), at 1. Later in its memo, however, Atmel makes it clear that it seeks both 100% of Royal's payments and one-half of Royal's payments, or about 150% of what Royal paid. *Id.*, at 11.

2

for an insured's recoveries from an independent source.[2] St. Paul contends that the collateral source rule is inapplicable here.

The California Supreme Court has described the collateral source rule as follows: "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." *Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal. 3d 1, 6 (1970). St. Paul contends that the monies paid by Royal on behalf of Atmel toward the defense and settlement of the *Seagate* action are not a collateral source as the rule is defined and applied in California. St. Paul argues that Royal's contribution toward Atmel's defense and settlement of the *Seagate* action was not compensation for tort damages allegedly caused by St. Paul, and that even if Atmel is an "injured party" seeking to recover compensation for tort damages inflicted by St. Paul as a tortfeasor, the monies paid by Royal were not "compensation for tort damages inflicted by the tortfeasor."

The Court agrees that the collateral source rule does not apply to Atmel's claim against St. Paul for bad faith damages. The critical flaw in Atmel's reasoning is that the monies that Royal contributed toward the defense and settlement in the *Seagate* action were not payments for any "injuries" suffered by Atmel as a result of St. Paul's actions. Instead, as St. Paul correctly notes, Royal paid these monies because Seagate sued Atmel, and Atmel was covered by an insurance policy issued by Royal that required Royal to defend and indemnify Atmel in covered third-party lawsuits. Unlike a situation where a tortfeasor has caused the injury and the insured receives compensation for the injury from a wholly independent third party, here, the alleged tortfeasor – St. Paul – did not cause the "injury" – the *Seagate* lawsuit. In contrast, in the cases in which courts have applied the collateral source rule, the payment by the collateral source would not have been made "but for" the injury caused by the tortfeasor. *See, e.g, Helfend*, 2 Cal. 3d at 4-5 (in personal injury action, collateral source rule applied to insurance payments of medical bills; tortfeasor causing accident not entitled to reduction in damages); *Arambula v. Wells*, 72 Cal. App. 4th 1006, 1010-12 (1999) (in personal injury action, collateral source rule applied to gratuitous wage payments; tortfeasor causing inability to work not entitled to reduction in damages).

---

[2] Adding the collateral source recovery to the other damages claimed, Atmel seeks $15,912,512 from St. Paul, nearly double what Atmel actually paid out, making defective chips a new profit center.

3

The cases cited by Atmel do not hold otherwise, and indeed Atmel has not cited any authority to support the application of the collateral source rule in this context. Atmel's reliance on *Textron Financial Corporation v. National Union Fire Insurance Company of Pittsburgh*, 118 Cal. App. 4th 1061 (2004), is unavailing. In *Textron*, the trial court held that the third parties with whom the plaintiff insured had settled could not be considered collateral sources – presumably because they were joint tortfeasors – and accordingly the collateral source rule did not apply. *See id.* at 1077-78. Thus, to the extent *Textron* discusses the collateral source rule, the case is inapposite. The *Textron* court also held that "an insured is entitled to receive compensation in accordance with the policy terms, and an insurer cannot reduce the amount recoverable merely because [the insured] has collateral contracts or relations with third persons which relieve him wholly or partly from the loss against which the insurance company agreed to indemnify him." *Id.* at 1077. Here, just as in *Textron*, if Atmel prevails on its breach of contract claim, it will be entitled to "receive compensation in accordance with the policy terms."[3]

The other principal case relied on by Atmel is also inapposite. In *Kardly v. State Farm Mutual Automobile Insurance Company*, 207 Cal. App. 3d 479 (1989), the plaintiffs were involved in a car accident and they filed a claim with their insurer, State Farm, for collision damage, towing expenses, lost personal goods, and medical expenses. *Id.* at 482. State Farm paid for the medical expenses and a radio that was stolen from the car after the accident occurred. State Farm and the Kardlys could not reach a settlement on the remaining claims, and State Farm informed the Kardlys they could sue the tortfeasor (an individual named Short) if they believed the settlement offer was inadequate. The Kardlys obtained a damages verdict in a personal injury action against Short, including a recovery for emotional distress. *Id.* The Kardlys then sued State Farm alleging a bad faith denial of their claims under the insurance policy, and they sought, *inter alia*, emotional distress damages. *Id.* State Farm argued that the Kardlys were seeking a double recovery because they had received full relief in their action against

---

[3] To the extent Atmel suggests that it is entitled to the amounts that Royal paid toward the *Seagate* defense and settlement as contract damages, Atmel has not identified any provisions of the policy allowing for such recovery, nor has Atmel cited any legal authority for such a proposition. *Cf. Plut v. Fireman's Fund Ins. Co.*, 85 Cal. App. 4th 98, 107 (2000) ("[T]he overwhelming weight of authority in California and other jurisdictions has rejected the extension of the collateral source rule to breach of contract.").

Short, including full compensation for mental distress caused by State Farm's tortious conduct. *Id.* at 483.

The *Kardly* court rejected State Farm's arguments, and noted that the trial court in the plaintiffs' case against Short had excluded evidence concerning the Kardlys' dealings with State Farm, and thus the Kardlys could not have recovered in that case for emotional distress caused by State Farm. *Id.* at 484-85. The court further held that Short and State Farm were separate and independent tortfeasors, and that the collateral source rule applied – and thus State Farm's liability could not be reduced by the Short damages verdict – because "[e]veryone is responsible for the consequences of his or her wrongs" and "[t]he Kardlys' recovery from Short for her negligent driving bears no relationship to the potential liability of State Farm in this suit." *Id.* at 486.

*Kardly*'s holding does not support the application of the collateral source rule in this context. *Kardly* was concerned with ensuring that a victim of two separate tortfeasors, who has suffered separate injuries at the hands of these tortfeasors, is able to obtain full recovery for his or her injuries. In *Kardly*, if the collateral source rule was not applied, the second tortfeasor, State Farm, would have escaped liability for its tort and the victims would have received less than full recovery for their injuries. Importantly, the *Kardly* court did not hold that State Farm was required to pay the Kardlys the amount that Short owed the Kardlys, which is essentially what Atmel seeks here; instead, *Kardly* simply held that State Farm was liable for the injuries that State Farm caused, and that State Farm could not avoid liability simply because a separate tortfeasor also owed the Kardlys damages for a separate tort.

Here, Royal contributed to the *Seagate* defense and settlement pursuant to the terms of the insurance policy Royal issued Atmel, and Royal made these payments without regard to anything that St. Paul did or did not do.[4] *Kardly* simply holds that if Atmel prevails, it is entitled to full recovery from St. Paul *for the injuries caused by St. Paul*. Applying the collateral source rule to allow Atmel to seek the Royal payments would result in Atmel recovering "damages" that were not proximately caused by St Paul's alleged misconduct. *Cf. Emerald Ba y Community Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal.

---

[4] If it is determined that St. Paul breached its duties to Atmel and that St. Paul should have defended and indemnified Atmel in the *Seagate* action, it may be that Royal paid more than its share; however, as Royal's assignee on Royal's equitable contribution rights, Atmel is already pursuing a damages claim on that basis.

5

1  App. 4th 1078, 1093-94 (2005) ("Tort damages are the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not. Since a tort action for breach of the covenant of good faith and fair dealing is one seeking recovery of a property right, not personal injury, to prevail the insured must show proof of economic loss.") (internal citations and quotations omitted).

The Court's holding is also consistent with the policy underlying the collateral source rule. As the California Supreme Court stated in *Helfend*,

> The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any other possible source of funds. If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.

2 Cal. 3d at 10. Here, if St. Paul is found liable to Atmel, it will be required to pay "full compensation for the injury inflicted." However, because the Royal payments were not connected to any injury inflicted by St. Paul, there is no concern, as articulated in *Helfend*, that St. Paul is being allowed to mitigate damages with payments from Atmel's other insurance carrier, or that Atmel has not earned a benefit from its policy with Royal.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS St. Paul's motion for partial summary judgment re: collateral source rule. (Docket No. 320).

**IT IS SO ORDERED.**

Dated: March 24, 2006

_Susan Illston_
SUSAN ILLSTON
United States District Judge

6